# In the United States Court of Federal Claims

Case No. 10-303C
Filed: September 7, 2011
**TO BE PUBLISHED**

| | |
|---|---|
| ************************************************* | Living quarters allowance under |
| JOHN THOMAS, | 5 U.S.C. § 5923; implementing |
|     *Plaintiff,* | regulations; Department of State |
| | Standardized Regulation 031.12; |
| v. | money-mandating language; |
| | mandatory payment upon |
| | satisfaction of certain conditions; |
| THE UNITED STATES OF AMERICA, | conflicting regulations |
|     *Defendant.* | |
| ************************************************* | |

    ***William Lee Bransford***, Shaw, Bransford, et al., Washington, D.C., Counsel of Record for Plaintiff.

    ***Jane C. Dempsy***, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for Defendant.

    ***Amelia Moorstein***, law clerk.

## OPINION

**BASKIR,** Judge.

    I.    INTRODUCTION

    This case comes before the Court on Cross-Motions for Summary Judgment. Because payment of living quarters allowances under 5 U.S.C. § 5923 becomes mandatory upon satisfaction of certain conditions and Plaintiff has presented sufficient evidence demonstrating that he has satisfied these conditions, **the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.**

    II.    FACTUAL BACKGROUND

    The following facts are taken from the parties' briefs. Plaintiff filed a Complaint in this Court on May 19, 2010, to recover a living quarters allowance from June 1, 2004 to

the present, for his work as a construction representative for the U.S. Army Corps of Engineers (Army Corps) in Aviano, Italy.

Prior to his employment with the Army Corps, Plaintiff worked for a U.S. firm, Wireless Communication Technical Services, Inc., as a civilian U.S. Government contractor communications technician from October 2003 to May 28, 2004. He resided and worked in Italy during this time pursuant to a U.S.-sponsored visa. The job offer for this position was addressed to 2 Sesame Street, Mesquite, TX 75149, and stated that Plaintiff would be reimbursed for his return transportation to the United States if he resigned or employment was no longer available, as long as Plaintiff completed at least twelve months of employment with the firm.

Plaintiff applied for a position with the Army Corps on April 17, 2004, under vacancy announcement NEGE04786352. The announcement was for a position as a GS-809-11 construction representative in Aviano, Italy with the Army Corps and required that applicants be Army employees and be eligible for a family member appointment. Plaintiff did not meet the eligibility criteria, but he was offered an identical position under the Veterans Recruitment Appointment Authority. He qualified under this authority because he had previously been honorably discharged from the Air Force. He accepted the job on May 14, 2004, resigned from his other position on May 28, 2004, and was appointed as a construction representative on June 1, 2004.

III.   STATUTORY BACKGROUND

The granting of living quarters allowances is dictated by statute and the implementing regulations.

The statute at issue is 5 U.S.C. § 5923. It states,

> (a) When Government owned or rented quarters are not provided without charge for an employee in a foreign area, one or more of the following quarters allowances may be granted when applicable:
> (1)  A temporary subsistence allowance for the reasonable cost of temporary quarters (including meals and laundry expenses) incurred by the employee and his family—
>    (A)  for a period not in excess of 90 days after first arrival at a new post of assignment in a foreign area or a period ending with the occupation of residence quarters, whichever is shorter; and
>    (B)  for a period of not more than 30 days immediately before final departure from the post after the necessary evacuation of residence quarters.
> (1)  A living quarters allowance for rent, heat, light, fuel, gas, electricity, and water, without regard to section 3324(a) and (b) of title 31.

Another statute in the same subchapter, 5 U.S.C. § 5922, provides that,

> …(c) The allowances and differentials authorized by this subchapter shall be paid under regulations prescribed by the President governing—
> (1) payments of the allowances and differentials and the respective rates at which the payments are made;
> (2) the foreign areas, the groups of positions, and the categories of employees to which the rates apply; and
> (3) other related matters.

The Department of State implemented regulations pursuant to the power granted in 5 U.S.C. § 5922.  Department of State Standardized Regulation (DSSR) 031.12 provides that,

> Quarters allowances prescribed in Chapter 100 may be granted to employees recruited outside the United States, provided that:
>
> a. the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributable to his/her employment by the United States Government; and
>
> b. prior to appointment, the employee was recruited in the United States, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the former Canal Zone, or a possession of the United States by:
> (1) the United States Government, including its Armed Forces
> (2) a United States firm, organization, or interest;
> (3) an international organization in which the United States Government participates; or
> (4) a foreign government
> and had been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States, the Commonwealth of Puerto Rico, the Commonwealth of Northern Mariana Islands, the former Canal Zone, or a possession of the United States; or
>
> a. as a condition of employment by a Government agency, the employee was required by that agency to move to another area, in cases specifically authorized by the head of agency.

DSSR 013 provides,

> When authorized by law, the head of an agency may defray official residence expenses for, and grant…quarters…to an employee of his/her agency and

require an accounting therefor, subject to the provisions of these regulations and the availability of funds.  *Within the scope of these regulations*, the head of an agency may issue such further implementing regulations as he/she may deem necessary for the guidance of his/her agency with regard to the granting of and accounting for these payments…

(emphasis added).

Pursuant to DSSR 013, the Secretary of Defense issued regulations pertaining to overseas allowances in the Department of Defense Instruction Manual (DODI).  Subchapter 1250.43 of DODI 1400.25 states, "[o]verseas allowances and differentials (except the post allowance) are not automatic salary supplements, nor are they entitlements;" that the allowances "are specifically intended to be recruitment incentives for U.S. citizen civilian employees living in the United States to accept Federal employment in a foreign area;" and "[i]f a person is already living in the foreign area, that inducement is normally unnecessary."  DODI also delegated the authority to grant waivers for living quarters allowances to Department of Defense Components, such as the Army Corps and Army.

The Army Corps issued a Living Quarters Policy memorandum on July 20, 2001, that discussed DODI 1400.25, subchapter 1250.  The memo stated that "LQA will not be authorized under circumstances other than those described in this policy;" that "LQA is not an automatic salary supplement or entitlement.  It is an allowance to provide a recruitment incentive for U.S. citizen civilian employees living in the United States to accept Federal employment in foreign areas.  When an individual is already residing in a foreign area, LQA as a recruitment incentive is not normally required."  It outlined the situations where payment of a living quarters allowance would be authorized.  The Army issued another regulation pertaining to living quarters allowances, Army in Europe Regulation (AER) 690-500.592.  It states that Federal employees selected for a position must meet certain named criteria to obtain a living quarters allowance.

IV.     LEGAL STANDARDS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).  The moving party bears the initial burden of establishing the absence of any disputes of material fact.  *Seal-Flex, Inc. v. Athletic Track and Court Const.,* 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing *Celotex Ciro v. Catrett,* 477 U.S. 317, 323 (1986)).  "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." *Id.*  Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence.  *Celotex*, 477 U.S. at 325.

RCFC Rule 12(b)(1) states that the Court may dismiss a complaint for lack of subject matter jurisdiction.  Generally, this Court possesses jurisdiction to entertain monetary claims founded upon the Takings Clause of the United States Constitution, statutes, regulations, or contracts.  28 U.S.C. §1491(a)(1); *see United States v. Mitchell,* 463 U.S. 206, 215-18 (1983).  The statutory or constitutional claims a plaintiff asserts must be "money-mandating" to come within the jurisdiction of this Court. *United States v. Testan*, 424 U.S. 392, 398 (1976).  The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Alder Terrace, Inc. v. United States,* 161 F.3d 1372 (Fed. Cir. 1998). The Court may look at evidence outside of the pleadings in order to determine jurisdiction over a case, *Martinez v. United States,* 48 Fed. Cl. 851, 857 (2001), and may raise the issue of subject matter jurisdiction *sua sponte*.  *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993).

V.     DISCUSSION

A. Jurisdiction

Defendant did not make a formal motion to dismiss pursuant to RCFC Rule 12(b)(1), but its arguments are mainly jurisdictional so the Court raises this jurisdictional issue *sue sponte*.  Defendant's arguments are addressed below.

Defendant takes issue with the use of "may" in 5 U.S.C. § 5923.  It argues that "may" is discretionary language, so the statute cannot be money-mandating.  But the use of "may" in a statute does not necessarily mean that the statute is discretionary.  In *Fisher v. United States*, 402 F.3d 1167 (2005), the Court considered whether a military disability retirement payment statute was money mandating.  The Court discussed *Sawyer v. United States,* 930 F.2d 1577 (Fed. Cir. 1991): "Despite the presence of the word 'may' in the statute, in *Sawyer* we determined that the Secretary has no discretion whether to pay out retirement funds once a disability is found qualifying.  Thus, we held that the statute is money-mandating because when the requirements of the statute are met…the member is entitled to compensation."  *Fisher*, 402 F.3d at 1174.  Consequently, the Court in *Fisher* found that the use of "may" followed by conditions for receiving disability retirement pay made the statute at issue money-mandating.  *Id.*

5 U.S.C. § 5922 states, "[t]he allowances and differentials authorized by this subchapter *shall* be paid under regulations prescribed by the President governing…payments of the allowances and differentials and the respective rates at which the payments are made" (emphasis added).  In 5 U.S.C. § 5923, the word "may" is used in the phrase "may be granted when applicable," and specific conditions for granting allowances are set forth in the DSSR implementing regulations.  Thus, the statute becomes mandatory upon satisfaction of these conditions for granting allowances.  This conclusion is supported by other cases in the U.S. Court of Federal Claims.  In *Adde v. United States,* 81 Fed. Cl. 415 (2008), the Court held that 5 U.S.C. § 5923 "is mandatory once the employee has fulfilled the conditions which make the allowance applicable to his or her employment overseas."  *Adde*, 81 Fed. Cl. at 419.

This holding was based on other cases that had held the DSSR regulations entitled employees to living quarters allowances once the conditions were met.  *See Tyler v. United States,* 220 Ct. Cl. 387 (1979); *Brown v. United States*, 217 Ct. Cl. 710 (1978); *Trifunovich v. United States,* 196 Ct. Cl. 301 (1971); *Boston v. United States,* 28 Fed. Cl. 66 (1993); *Zervas v. United States,* 43 Fed. Cl. 220 (1999)).  Though these cases are not binding precedent, they are strongly persuasive.

      B.      <u>Living Quarters Entitlement</u>

Since we find that the Court has jurisdiction to hear Plaintiff's claim, we turn to the issue of whether Plaintiff is entitled to receive a living quarters allowance.  Plaintiff meets the conditions set forth in DSSR 031.12(b); the allowance becomes mandatory upon the satisfaction of the specified conditions, so Plaintiff is entitled to a living quarters allowance.

The relevant requirements for receiving a living quarters allowance according to DSSR 031.12 are:

> a. the employee's actual place of residence in the place to which the quarters allowance applies at the time of receipt thereof shall be fairly attributable to his/her employment by the United States Government; and
> b. prior to appointment, the employee was recruited in the United States…by:
> 
> …
> 
> (2) a United States firm, organization or interest;
> 
> …
> 
> and had been in substantially continuous employment by such employer under conditions which provided for his/her return transportation to the United States…; or
> c. as a condition of employment by a Government agency, the employee was required by that agency to move to another area, in cases specifically authorized by the head of agency.

Plaintiff has presented undisputed evidence that he satisfies conditions (a) and (b).  An offer from his previous employer, Wireless Communication Technical Services, Inc., is addressed to him at a Mesquite, Texas address and states, "You will be reimbursed [for airfare] for your return to the United States if you resign or employment is no longer available."  Pl. Ex. 2.  This offer letter shows that he was recruited in the United States by Wireless Communication Technical Services (a U.S. firm) and that Plaintiff was to be given return transportation to the United States.  Plaintiff would have returned to the United States but for the fact that he received another job offer with the U.S. Government that required him to continue to reside in Italy.  Thus, his residence in Italy is "fairly attributable" to his employment with the U.S. Government.  Plaintiff signed an affidavit stating that he was in "substantially continuous employment" by Wireless

Communication Technical Service prior to his appointment, and Defendant does not dispute this statement.  Pl. Ex. 1, CSUF ¶ 6.

The Court disregards the other regulations and guidances implemented pursuant to the DSSR insofar as they conflict with the DSSR.  DODI, the Army Corps Memorandum, and AER 690-500.592 conflict with the DSSR because they give the agency discretion to disallow a living quarters allowance when the DSSR provisions would otherwise mandate the allowance.

VI.     CONCLUSION

For the foregoing reasons, **Defendant's Motion for Summary Judgment is DENIED**, and **Plaintiff's Motion for Summary Judgment is GRANTED.**

**The parties are to file a Joint Status Report informing the Court on further proceedings regarding damages no later than October 31, 2011.**

**IT IS SO ORDERED.**

                                           s/ Lawrence M. Baskir
                                           LAWRENCE M. BASKIR
                                                 Judge